**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------X
ROSANNY ESPINAL,

                      Plaintiff,

    - against -

LUXOTTICA d/b/a SUNGLASS HUT,

                      Defendant.
---------------------------------------------------------X

Case No. 1:23-cv-520

**COMPLAINT**

**PLAINTIFF DEMANDS**
**A TRIAL BY JURY**

Plaintiff, ROSANNY ESPINAL, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendant, LUXOTTICA d/b/a SUNGLASS HUT, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff brings this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. §§ 2000e(k) (the "PDA"), the New York State Human Rights Law, New York State Executive Law §§ 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-502(a) *et seq.*, and seeking damages to redress the injuries she has suffered as a result of being discriminated and retaliated against on the basis of her sex/gender and pregnancy.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

2. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction over Plaintiff's claims under the NYSHRL and the NYCHRL pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as the acts complained of occurred within the Southern District of New York.

5. By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 12, 2022, (b) receiving a Notice of Right to Sue from the EEOC on November 29, 2022, (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, and (d) contemporaneously with the filing of this Complaint, mailing copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as **"Exhibit A;"** a copy of the transmittal letter to the NYCCHR *et ano.* is annexed hereto as **"Exhibit B."**

## PARTIES

6. Plaintiff, Rosanny Espinal, ("Ms. Espinal") is a resident of the State of New York and Queens County.

7. Defendant Luxottica is a foreign business corporation duly existing pursuant to, and by virtue of, the laws of the State of Delaware.

8. Defendant Luxottica is a large corporation that owns luxury eyewear brands and retail outlets throughout the world.

9. Defendant Luxottica owns and operates Sunglass Hut, a chain of eyeglass-wear stores located throughout the United States, including a store located at 20 Hudson Yards, New York, New York 10001.

10. Defendant has more than fifteen employees.

11. At all relevant times, Plaintiff was an employee of the Defendant (hereinafter referred to as "Sunglass Hut").

## MATERIAL FACTS

12. On or about October 15, 2018, Ms. Espinal began working for the Sunglass Hut located inside the flagship Macy's Luxury Department store in New York City.

13. Ms. Espinal was first hired as a Sales Supervisor and was promoted within months to Sales Manager.

14. On October 11, 2020, Ms. Espinal was transferred to the Sunglass Hut located in Hudson Yards, retaining her title of Sales Manager and her full-time employment status.

15. On or around the week of April 18th, 2021, Ms. Espinal informed Store Manager, Michelle Martino ("Martino"), that she was pregnant.

16. Martino was Ms. Espinal's direct supervisor and had the authority to hire, fire, and affect the terms and conditions of her employment.

17. After informing Martino of her pregnancy, Martino began to treat Ms. Espinal differently, exhibiting hostility, nitpicking at her work performance, and complaining repeatedly that she was taking too much time for restroom breaks.

18. Ms. Espinal needed to use the restroom more frequently because of her pregnancy and advised Martino of that fact.

19. When Ms. Espinal was working alone in the store and needed to use the restroom, she had to close the store and put a sign up indicating that she would be right back.

20. Martino continued to complain about when and how often Ms. Espinal took these medically necessary restroom breaks.

21. Because of Martino's criticism regarding her restroom use, Ms. Espinal became self-conscious and began holding her urine for longer periods of time.

22. On or about May 21, 2021, Ms. Espinal was diagnosed with a urinary tract infection ("UTI") likely caused by having to limit her restroom use.

23. The UTI required a course of antibiotics and increased Ms. Espinal's vigilance to take necessary restroom breaks.

24. Approximately two weeks later, Martino informed Ms. Espinal that she was monitoring the store cameras to watch her, and that she was continuing to take too long to go to the restroom.

25. Around this same time, Ms. Espinal informed Martino that she could not lift more than 25 lbs. due to the pregnancy, as advised by Ms. Espinal's physician.

26. Martino argued with her, saying that was not true. Martino told Ms. Espinal that if she persisted with the reasonable accommodation request, she should bring in a doctor's note.

27. Around the same time, Martino began complaining about Ms. Espinal's pregnancy-related doctor's appointments, which were scheduled on Tuesday mornings, because that was the day Martino worked longer hours and the appointment time inconvenienced her.

28. Ms. Espinal explained that it was the doctor that scheduled the appointments and not easily rearranged. Martino told Ms. Espinal she was "selfish" because she was not making an effort to accommodate her schedule.

29. Ms. Espinal was performing well in her job and meeting her sales numbers. However, in early June, in a continuation of the pregnancy harassment, Martino put her on a discriminatory performance improvement plan ("PIP"). This is the first PIP Ms. Espinal was placed on in the 3 years she worked at Sunglass Hut.

30. Martino's criticisms of Ms. Espinal, as stated on the PIP, are vague and picayune. The PIP was used as additional harassment because of Ms. Espinal's pregnancy.

31. For example, one item for improvement states: "Rosanny will consistently wear her name badge during her shifts." To measure her improvement on this front, the store manager (Martino), "will observe during shifts and camera observations."

32. On June 18, 2021, Ms. Espinal obtained a note from her doctor indicating her need for reasonable accommodations related to her pregnancy.

33. The doctor's note states in pertinent part: "Patient can work with following limitation: No heavy lifting more than 10 lbs., allow for hourly bathroom and rest break."

34. Lifting was not an essential function of the job, and in any event, lifting was an infrequent occurrence, perhaps 3 to 4 times a week. When needed, Ms. Espinal worked around the restriction by sliding boxes, squatting on the floor to unload inventory, or by other means that did not cause an inconvenience to the staff.

35. Because Ms. Espinal was infected with COVID-19 soon thereafter, and was instructed to self-quarantine, returning to work no earlier than July 5, 2021, she was delayed in providing Martino the doctor's note.

36. Upon her return to work, on or about July 5, 2021, Ms. Espinal provided Martino her doctor's note, dated June 18, 2021, setting out the pregnancy-related reasonable accommodations request.

37. Martino denied the accommodations without engaging in the interactive process, stating that the note was not specific enough.

38. Martino also threatened Ms. Espinal with a transfer, telling her that because she needed these accommodations, she might have to work at another location.

39. Martino's discriminatory, harassing, and retaliatory behavior that began as soon as Ms. Espinal informed her that she was pregnant, was causing her great emotional difficulty and stress.

40. On July 6, 2021, Ms. Espinal called the employee complaint line for Luxottica, "Luxottica Speak-up," to report the discrimination to a representative.

41. The written report made by the representative clearly documents Ms. Espinal's complaints: Martino's denial of her accommodations, the hostile work environment she created related to the pregnancy, and that Martino had threated to transfer her for requesting the accommodations.

42. Ms. Espinal called several more times that night because she was distressed as to what to do and concerned that she was risking her job by complaining. Ultimately, Ms. Espinal asked for help from the company on this matter. No one from the company contacted her or followed up.

43. Around this time, Ms. Espinal was diagnosed with partial placenta previa, increasing the odds of delivering prematurely or having a high risk pregnancy. Her doctor advised her to take certain precautions such as no heavy lifting and ensuring plenty of pelvic rest.

44. Ms. Espinal informed Martino of her diagnosis and the need to use a stool on the sales floor to ensure enough rest for her pelvic area and explaining that she only planned to use it when customers were not in the store. Martino would not approve the request.

45. In mid-to late July 2021, Ms. Espinal called Employee and Labor Relations for Luxottica North America to complain about Martino's harassment and denial of her accommodation requests. Ms. Espinal spoke to a Senior Manager in the department.

46. The Senior Manager sent Ms. Espinal a form for her doctor to complete so she could get her accommodations.

47. A few days after submitting the companies required form, the Senior Manager called to say that Ms. Espinal's accommodations were normal and approved, including the request for use of a stool on the sales floor. The Senior Manager also assured her that the Regional Manager, who Martino reported to, was aware of the issues and supportive of the accommodations.

48. Ms. Espinal was not told if Martino was informed or if any action was taken against Martino for the harassment and denial of the requests.

49. Martino also increased her harassment and adverse treatment of Ms. Espinal in retaliation for Ms. Espinal's complaints of discrimination and requests for accommodation, both protected activities.

50. For instance, Martino began scheduling Ms. Espinal for fewer hours, left her alone frequently on the sales floor for long periods of time, and began scheduling her the closing shift 3-4 times per week (which means working late). Martino also hassled Ms. Espinal regarding the use of the stool.

51. Approximately one month later, Martino said she wanted to follow up with Ms. Espinal regarding the PIP she had placed her on in June.

52. Martino told Ms. Espinal that she was still was not meeting expectations and would therefore continue the PIP.

53. In fact, Ms. Espinal had followed through on all the small tasks Martino had directed her do on her PIP, such as wearing her name badge consistently, creating "curated cards" on all customers, and "documenting date of conversations for all findings on associate plan."

54. Ms. Espinal was becoming very concerned that Martino was setting her up to terminate her.

55. In late September, Ms. Espinal requested time off at the end of October in order to prepare and attend her own baby shower.

56. Martino told her she was going to deny her request. She stated that Ms. Espinal had been taking too much time off. Ms. Espinal was making this request approximately 30 days in advance of the days she needed off and she had available PTO to use.

57. On October 1, 2021, Ms. Espinal began working as usual, but was pulled away from a customer by Martino, who led her to the back saying she had to go to a meeting.

58. Ms. Espinal was led to a video conference with two Employee and Labor Relations representatives, including the Senior Manager she had previously complained to about Martino's pregnancy harassment, retaliation, and failure to accommodate her reasonable requests.

59. Ms. Espinal was informed that she was being terminated effective immediately. Upon her inquiry, the representative said that it was due to "job performance."

60. This pretextual reason was never put in writing.

61. Ms. Espinal had been performing her job well, completing all the small written tasks Martino had emphasized on the PIP, and meeting her sales goals.

62. Ms. Espinal was terminated because of her pregnancy and in retaliation for her pregnancy accommodation requests.

63. Ms. Espinal's repeated complaints to the hotline and to the Employee and Labor Relations representatives about the pregnancy discrimination was never addressed or rectified.

64. Based upon the aforementioned conduct described, that Defendant discriminated against Ms. Espinal by: 1) subjecting her to harassment based on her pregnancy, 2) discriminating against her in the terms, conditions, and privileges of employment, 3) failing to accommodate her pregnancy-related reasonable accommodations requests, 4) retaliating against her in her terms, conditions, and privileges of employment because of her complaints of discrimination and for making reasonable accommodation requests, 5) failing to take action in response to her complaints of discrimination, and 6) terminating her employment because of her pregnancy and in retaliation for protected activity.

**Harm to Plaintiff**

65. The discrimination, harassment, and retaliation that Ms. Espinal endured, starting from approximately April 18, 2021, when she informed her store manager that she was pregnant, until October 1, 2021, when she was terminated, took a significant toll on her physical and mental health.

66. Ms. Espinal felt overwhelming stress, anxiety, and discomfort in the workplace throughout this period due to her store manager's hostility and harassment.

67. Being placed on an unjustified PIP, being denied and then having to fight for reasonable accommodations necessary for a healthy pregnancy, and then being terminated left Ms. Espinal feeling humiliated, offended, degraded, victimized, embarrassed, and depressed.

68. The pregnancy discrimination that Ms. Espinal endured negatively affected her pregnancy both physically and emotionally, and this harm is continuing, as she now has the stress of being pregnant and unemployed. She also was denied the maternity leave provided by Sunglass Hut.

69. As a result of the discriminatory acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entailed.

70. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

71. As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

72. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

73. As such, Plaintiff demands punitive damages.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

74. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

75. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e(k) provides, in pertinent part, that:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 703(h) of this title [42 USCS § 2000e-2(h)] shall be interpreted to permit otherwise.

76. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq*., for relief based upon the unlawful employment practices of the Defendant. Plaintiff complains of Defendant 's violation of

Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex.

77. Defendant violated the sections cited herein as set forth.

78. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiff because of her sex/gender and pregnancy.

### AS A SECOND CAUSE OF ACTION
### FOR DISCRIMINATION UNDER PDA

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

80. Title VII of the Civil Rights Act of 1964, as amended by the PDA, 42 U.S.C. § 2000e(k), provides, in pertinent part, that:

> **The terms "because of sex" or "on the basis of sex" include**, but are not limited to, because of or **on the basis of pregnancy,** childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 703(h) of this title [42 USCS § 2000e-2(h)] shall be interpreted to permit otherwise.

81. Plaintiff complains of Defendant's violations of the PDA's prohibition against discrimination in employment based, in whole or in part, upon an employee's pregnancy.

82. Defendant violated the sections cited herein as set forth.

83. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by denying Plaintiff reasonable workplace accommodations because of her sex/gender and pregnancy.

### AS A THIRD CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

85. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

86. Defendant engaged in unlawful employment practices prohibited by discriminating and retaliating against Plaintiff with respect to the terms, conditions or privileges of employment.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYSHRL

87. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

88. New York State Executive Law § Executive Law § 296 provides that,

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, **sex**, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

89. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex/gender and pregnancy

## AS A FIFTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE NYSHRL

90. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

91. New York State Executive Law § 296(1)(e) provides that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

92. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her opposition to the unlawful employment practices of the Defendant.

## AS A SIXTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYCHRL

93. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

94. The New York City Administrative Code § 8-107(1) provides that:

    It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender**, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or **to discriminate against such person in compensation or in terms, conditions or privileges of employment.**

95. The New York City Administrative Code § 8-107(22)(a) also provides that:

    **It shall be an unlawful discriminatory practice for an employer to refuse to provide a reasonable accommodation**, as defined in section 8-102, **to the needs of an employee for the employee's pregnancy**, childbirth, or related medical condition that will allow the employee to perform the essential requisites of the job, provided that such employee's pregnancy, childbirth, or related medical condition is known or should have been known by the employer.

96. The New York City Administrative Code § 8-107(28)(a) also provides that:

    **It shall be an unlawful discriminatory practice for an employer**, labor organization or employment agency or an employee or agent thereof **to refuse or otherwise fail to engage**

**in a cooperative dialogue within a reasonable time with a person who has requested an accommodation** or who the covered entity has notice may require such an accommodation… **[r]elated to pregnancy, childbirth or a related medical condition** as provided in subdivision 22 of this section.

97. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her sex/gender and pregnancy.

## AS A SEVENTH CAUSE OF ACTION
## RETALIATION UNDER THE NYCHRL

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

99. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

100. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(7) by retaliating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendant.

## JURY DEMAND

101. Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the Title VII, the NYSHRL, and the NYCHRL, in that Defendant discriminated and retaliated against Plaintiff on the basis of her sex/gender and pregnancy:

14

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
January 20, 2023

**PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC**

By: _____
Michelle A. Caiola, Esq.
Jonathan Goldhirsch, Esq.
Phillips & Associates, PLLC
*Attorneys for the Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
T: (212) 248 – 7431
F: (212) 901 – 2107
mcaiola@tpglaws.com